**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AREX INDUSTRIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No.:**  4:25-cv-541 |
| -v- | ) | |
| | ) | |
| DIODE DYNAMICS, LLC; | ) | |
| and DOES 1-10, inclusive | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

1.      Plaintiff Arex Industries, Inc. ("Arex" or "Plaintiff") brings the present action

against Diode Dynamics, LLC ("Diode Dynamics" or "Defendant") and alleges as follows:

**JURISDICTION AND VENUE**

2.      This Court has original subject matter jurisdiction over the claims in this action

under the provisions of the Patent Act, 35 U.S.C. § 1, et seq., 28 U.S.C. § 1338(a)-(b) and 28

U.S.C. § 1331.

3.      This Court has personal jurisdiction over Diode Dynamics. Upon information and

belief, Diode Dynamics is a business entity organized and existing under the laws of the State of

Missouri. The Court also has personal jurisdiction over Diode Dynamics because, upon

information and belief, Diode Dynamics has committed, aided, abetted, contributed to, and/or

participated in the commission of patent infringement in judicial district and elsewhere. Upon

information and belief, Diode Dynamics sells and offers to sell its infringing products directly

through their website to the public throughout the United States, including this judicial district.

Diode Dynamics also sells and offers to sell their infringing products through third party online retailers throughout the United States, including this judicial district.

4.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b). Diode Dynamics resides in this judicial district because Diode Dynamics is organized in the State of Missouri and has a registered agent in this judicial district.

## THE PARTIES

5.      Plaintiff Arex Industries, Inc. is a corporation organized and existing under the laws of the State of California, having its principal place of business at 5300 Irwindale Avenue, Irwindale, California 91706. Arex Industries, Inc. is a market leader is the design, manufacture, and sale of automotive headlights, tail lights, fog lights, LED conversion kits, and accessories.

6.      Upon information and belief, Defendant Diode Dynamics is a corporation organized and existing under the laws of the State of Missouri, having its principal place of business at 3870 Millstone Pkwy, Saint Charles, MO 63301-4321.

7.      Upon information and belief, Diode Dynamics is also registered with the State of Missouri and operates under the fictitious name, Form Lighting, and owns and/or operates the website, formlights.com.

8.      Upon information and belief, Diode Dynamics is a manufacturer and distributor of various automotive lights, bulbs, modules, and accessories. Upon information and belief, Diode Dynamics advertises, markets, distributes, and sells their products, including the products that are the subject of the patent infringement alleged in this lawsuit, to the public throughout the United States, including within this judicial district.

## THE ASSERTED PATENT
### (U.S. Patent No. D1,055,331)

9.      On July 25, 2022, a U.S. design patent application titled "Vehicle Headlight" for a headlight design that is compatible with the 2021-2025 Ford Bronco was filed with the United States Patent and Trademark Office (USPTO).

10.     Subsequently, Arex showcased its Ford Bronco compatible headlights in November at SEMA 2022 trade show.

11.     On December 24, 2024, U.S. Patent No. D1,055,331 S ("the '331 Patent"), titled "Vehicle Headlight," was duly and legally issued by the USPTO. A true and correct copy of the '331 Patent is attached as **Exhibit 1**. The '331 Patent has one single claim directed to the ornamental design for a vehicle headlight compatible with the 2021-2025 Ford Bronco as shown below:

| Arex Industries, Inc.'s D1,055,331 S Patented Design | |
|---|---|
|  | |
| FIG. 1 | FIG. 2 |
| | |



FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

12.     Arex is the owner, through assignment, of all rights, title, and interest in the '331 Patent.

## DIODE DYNAMICS' WILLFUL INFRINGEMENT OF THE '331

13.     Following Arex's showcase of its Ford Bronco compatible headlights in November at SEMA 2022 trade show, Arex discovered at the SEMA 2023 trade show in November that Defendant Diode Dynamics was exhibiting a headlight design that was substantially similar to Arex's patent-pending design:

| Arex's '331 Patent | Defendant's Accused Product |
|---|---|
|  | |

14.     Arex promptly notified Defendant of its pending patent application for Ford Bronco compatible headlights and issued a cease and desist demand, citing the likelihood of consumer confusion due to the product's close resemblance.

15.     Diode Dynamics disregarded Arex's cease and desist demand and made no effort to cease their infringing activity.

16.     Notwithstanding its knowledge of Arex's pending application and subsequent patent issuance, Defendant deliberately continued in the willful manufacture, marketing, distribution, and sale of the Accused Products.

5

17.    After the issuance of the '331 Patent on December 24, 2024 by the USPTO, Arex has on multiple occasions contacted Defendant as well as reported Defendant's listings for patent infringement, through third-party platforms such as Amazon.com, regarding Defendant's Accused Products.

18.    Nonetheless, Defendant persists with the willful infringement of Arex's patented design through the continued manufacturing, marketing, distribution, and sale of the Accused Products even today.

19.    Arex possesses concrete evidence of actual confusion within the marketplace. Forum discussions clearly demonstrate consumers misattributing the Defendant's Accused products to Arex, indicating a direct association and confusion between the two.

20.    Furthermore, Arex has documented a specific instance of lost sales stemming from this confusion. A distributor, initially expressing strong interest in purchasing large quantities of Arex's uniquely designed products, abruptly ceased communication after illustrating the tangible financial harm and market disruption caused by the Defendant's actions the Defendant's

## COUNT I

### INFRINGEMENT OF UNITED STATES DESIGN PATENT D1,055,331 S
### (35 U.S.C. § 271)

21.    Arex hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

22.    Defendant has knowledge of Arex's design since as early as November of 2023 when Arex sent a letter to Defendant of its pending '331 Patent application. Despite the issuance of the '331 in December 24, 2024, Defendant continues to offer for sale, sell, and/or import into the United States for subsequent resale or use unauthorized products, namely the headlight

6

compatible with the 2021-2025 Ford Bronco that infringe Arex's patented design (the "Accused Products").

23.    Defendant copied the design for the Accused Products from the headlight design of the '331 Patent. A side-by-side comparison of the '331 Patented design and an exemplary specimen of Defendant's Accused Products is shown below, with the photograph of the exemplary headlight of Defendant 's  2021-2025 for Bronco LED Projector headlight:

| Arex's '331 Patent | Defendant's Accused Product |
|---|---|
|  |  |
|  |  |
|  |  |





24.     The *Egyptian Goddess*'s "ordinary observer test," in modified form, is the sole

test for design patent infringement. Specifically, infringement must be determined in light of the

prior art by "applying the ordinary observer test through the eyes of an observer familiar with the

prior art." *Egyptian Goddess* at 677. Egyptian Goddess also provides the following guidelines

helpful in carrying out infringement analysis:

     a.  When the claimed design is visually close to prior art designs, small differences

        between the accused design and the claimed design may be important in analyzing

        whether the overall appearances of the accused and claimed designs are

        substantially the same. *Egyptian Goddess , supra*, *at*  676.

b.  If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, an ordinary observer may find that feature important in analyzing whether the overall appearance of the accused and claimed designs are substantially the same. *Egyptian Goddess , supra*, *at* 677.

c.  If the accused design is visually closer to the claimed design than it is to the closest prior art, an ordinary observer may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same. *Egyptian Goddess , supra*, at 682.

25.    **First**, when the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same. *Egyptian Goddess, supra*, at 676. This is important because in evaluating whether the patented design is close to the prior art, it allows the fact finder to consider whether minor differences between the accused and the patented design are significant.

26.    Below is a chart of the Patented Design as compared to all of the prior art cited by the USPTO Examiner in the patent in suit.

| '331 Patent | Prior Art | |
|---|---|---|
| | **D701,985** | **D762,890** |
| |  |  |
| | **D763,485** | **D812,791** |
| |  |  |



| | D833,043 | D898,963 |
| | D904,652 | D919,133 |
| | D919,140 | D922,624 |
| | D922,625 | D929,622 |
| | D959,711 | D962,505 |



| | D1,013,107 | D1,013,232 |
|---|---|---|
| | D1,016,347 | D1,020,003 |
| | D1,020,007 | D1,024,372 |
| | D1,027,229 | D1,027,233 |
| | D1,028,301 | D1,030,103 |
| | D1,032,890 | |



One can see that while the Claimed Design shares the peripheral shape with of some prior art, none of the prior art has the same prominent features. Specifically, the Claimed Design features a circular LED ring bisected on one side by a horizontal, rectangular light bar.  The twin pairs of rounded, rectilinear, and convex – essentially pillow-shaped-LED lights are each housed in a rounded, relatively shallow, rectangular tray enclosure and are positioned parallel to each other, with a horizontal, rectangular light bar bisecting them. Surrounding the trays housing the pairs of LED elements, the surface displays a textured pattern composed of multiple horizontal, grille-like bars.

27.    In particular, the twin pair of lights, in trays, and the textured pattern of grille-like bars distinctively set the Claimed Design apart from the prior art.  In other words, the Claimed Design cannot be said to be close to the prior art.

28.    **Second**, if the accused design includes a feature of the claimed design that departs conspicuously from the prior art, then one may find that feature important in analyzing whether the overall appearance of the accused and claimed designs are substantially the same. *Egyptian Goddess*, *supra*, at 677.

29.    Below is a three-way comparison of the Claimed Design with the Accused Product and the prior art:

| '331 Patent | Accused Product | D701,985 |
|---|---|---|
|  |  |  |
| **'331 Patent** | **Accused Product** | **D762,890** |
|  |  |  |
| **'331 Patent** | **Accused Product** | **D763,485** |
|  |  |  |
| **'331 Patent** | **Accused Product** | **D812,791** |
|  |  |  |
| **'331 Patent** | **Accused Product** | **D833,043** |
|  |  |  |



| '331 Patent | Accused Product | D898,963 |
| '331 Patent | Accused Product | D904,652 |
| '331 Patent | Accused Product | D919,133 |
| '331 Patent | Accused Product | D919,140 |
| '331 Patent | Accused Product | D922,624 |



| '331 Patent | Accused Product | D922,625 |
| '331 Patent | Accused Product | D929,622 |
| '331 Patent | Accused Product | D959,711 |
| '331 Patent | Accused Product | D962,505 |
| '331 Patent | Accused Product | D1,013,107 |



| '331 Patent | Accused Product | D1,013,232 |
| '331 Patent | Accused Product | D1,016,347 |
| '331 Patent | Accused Product | D1,020,003 |
| '331 Patent | Accused Product | D1,020,007 |
| '331 Patent | Accused Product | D1,024,372 |



| '331 Patent | Accused Product | D1,027,229 |
| '331 Patent | Accused Product | D1,027,233 |
| '331 Patent | Accused Product | D1,028,301 |
| '331 Patent | Accused Product | D1,030,103 |
| '331 Patent | Accused Product | D1,032,890 |



30.     Here, it is very obvious that the Accused Product and the Claimed Design are virtually, if not exactly, identical. There are no easily discernable differences between the Accused Product and the Claimed Design. Both the Claim Design and the Accused Product, however, bear the prominent twin pair LED lights, in trays, and horizontal grille-like bars that conspicuously departs from the prior art.

31.     **Third**, if the accused design is visually closer to the claimed design than it is to the closest prior art, one may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same. *Egyptian Goddess, supra*, at 682.

32.     As already established above, the Accused Product is virtually, if not exactly, identical to the Claimed Design. The Claimed Design and the Accused Product are reproduced below for comparison:



| Arex's<br>D1,055,331 Patent | Diode Dynamics'<br>Accused Design |
|---|---|

Grille-like bars design around the pair of lenses inside the ring.

Two pairs of pillow-shaped LED lights inside tray enclosures

Grille-like bars design around the trays holding pair of lenses, inside the ring.

33.    Furthermore, departing from the Prior Art, both the Accused Product and the Claimed Design feature the prominent twin pairs of rounded, rectilinear, and convex—essentially pillow-shaped—LED lights each housed in a rounded, relatively shallow, rectangular tray enclosure and are positioned parallel to each other, with a horizontal, rectangular light bar bisecting them. Additionally, Surrounding the trays housing the pairs of LED elements, the surface displays a textured pattern composed of multiple horizontal, grille-like bars.

34.    There is no question that the overall appearances of the Accused Product and the Claimed Design are the same.

35.    Arex has not granted a license or any other authorization to Defendant to make, use, offer for sale, sell or import headlights that embody the headlight design patented in the '331 Patent and which is proprietary to Arex.

36.    Arex alleges upon information and belief that, without authority, Defendant has willfully infringed and continues to infringe the '331 Patent by, inter alia, making, using, offering to sell, or selling in the United States, including in the State of Missouri and within this District, products infringing the ornamental design covered by the '331 Patent in violation of 35 U.S.C. § 271, including but not limited to Defendant's headlight compatible with 2021-2025 Ford Bronco.

37.    Defendant infringes the '331 patent because, inter alia, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the headlight design of the '331 Patent and the headlight designs of Defendant's Accused Products including without limitation the headlight designs of the headlight compatible with 2021-2025 Ford Bronco are substantially the same, the resemblance being such as to deceive such an ordinary observer, inducing him to purchase one supposing it to be the other.

38.    Defendant's acts of infringement of the '331 Patent were undertaken without authority, permission or license from Plaintiff. Defendant's infringing activities violate 35 U.S.C. § 271.

39.    Plaintiff is informed and believes that Defendant intentionally sells, ships, or otherwise delivers the Accused Products in the United States, with knowledge that they are designed to and do practice the infringing features of the '331 Patent.

40.    Defendant's infringement of the '331 Patent in the offering to sell, selling, or importing of the Accused Products is willful.

41.     Defendant's wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the '331 Patented inventions. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

42.     Plaintiff is without an adequate remedy at law and has thus been irreparably harmed by these acts of infringement. Plaintiff asserts upon information and belief that infringement of the asserted claims of the '331 Patent is continuous and ongoing unless and until Defendant is enjoined from further infringement by the Court.

43.     Plaintiff is entitled to recover damages adequate to compensate for the infringement, including Defendant's profits pursuant to 35 U.S.C. § 289. Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

<u>**COUNT II**</u>

**TRADE DRESS INFRINGEMENT**
**(15 U.S.C. § 1125(a))**

44.     Arex hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

45.     In February 2019, Arex introduced headlights featuring the design elements protected under the "AlphaRex Lens Trade Dress." The AlphaRex Lens Trade Dress is unique and inherently distinctive, and comprised of the following non-functional elements:

      a.  An LED projector lens with rounded, rectilinear, and convex—essentially pillow-shaped—appearance;

      b.  a rounded, relatively shallow, rectangular tray enclosure having four curved facets;

      c.  the top and bottom curved facets are generally 150% longer than the curved vertical right and left facets; and

     d.   the four curved facets are joined at an approximately 90-degree angle and form an unibody.

46. The AlphaRex Lens Trade Dress is non-functional, visually distinctive, and unique in the automotive industry; examples of its distinctive appearance are shown in the drawing and photographs below:



47. The design of the AlphaRex Lens Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the light. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the AlphaRex Lens Trade Dress. The AlphaRex Lens Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render Arex's headlights, the embodiment of the AlphaRex Lens Trade Dress, as a distinct product originating solely from Arex.

48.     Arex's headlight, the embodiment of the AlphaRex Lens Trade Dress, is one of the most well-recognized and commercially successful styles of Arex brand of automotive products, having been featured in many of Arex's advertising and promotional materials as well as in various trade publications. Arex's headlights have received a large volume of media attention, for example through videos on youtube.com[1], specialty websites[2], and online discussion forums[3].

49.     Arex has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the Arex brand and its line of headlights embodying the AlphaRex Lens Trade Dress.

50.     Due to its use, extensive sales, and significant advertising and promotional activities, Arex's AlphaRex Lens Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Indeed, Arex has sold 130 million dollars' worth of headlights that embody the AlphaRex Lens Trade Dress. Accordingly, the AlphaRex Lens Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Arex as the exclusive source of automotive headlight featuring said trade dress.

51.     Upon information and belief, Diode Dynamics is a competitor of Arex and Defendant introduced Accused Products into the stream of commerce in an effort to exploit Arex's goodwill and the reputation of the Arex's headlights featuring the AlphaRex Lens Trade Dress.

52.     The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendant bear confusingly similar reproductions of the AlphaRex Lens

---

[1] https://www.youtube.com/watch?v=swmeJ6K4-xM
[2] https://www.offroadxtreme.com/videos/new-products/sema/sema-2019-alpharex-takes-headlights-to-another-level/
[3] https://www.f150gen14.com/forum/threads/new-2021-f-150-alpharex-led-headlights-at-sema.6849/

Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Arex of the Accused Products.

53.    Defendant's use of the AlphaRex Lens Trade Dress is without Arex's permission or authorization, and in total disregard of Arex's rights to control its intellectual property. There are numerous other headlight designs in the automotive industry, none of which necessitate copying or imitating the AlphaRex Lens Trade Dress.

54.    Defendant's use of the AlphaRex Lens Trade Dress is likely to lead to and result in confusion, mistake or deception, and is likely to cause the public to believe that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Arex.

55.    As a direct and proximate result of the foregoing acts, Arex has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Arex is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of its infringing acts.

56.    Furthermore, unless Defendant's unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Arex for the harm caused by Defendant's infringement, which is ongoing. Accordingly, Arex is entitled to injunctive relief prohibiting Defendants from continuing to infringe the AlphaRex Lens Trade Dress, or any designs confusingly similar thereto.

## COUNT III

### TRADE DRESS INFRINGEMENT—MISSOURI COMMON LAW
### (15 U.S.C. § 1125(a))

57.    Arex hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

58.     Defendants' infringement of the AlphaRex Lens Trade Dress also constitutes trade dress infringement under common law of the state of Missouri.

59.     The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendants bear confusingly similar reproductions of the AlphaRex Lens Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Arex of the Accused Products. Defendants' unauthorized use of the AlphaRex Lens Trade Dress has caused and is likely to cause confusion as to the source of Accused Products among consumers.

60.     As a direct and proximate result of the foregoing acts, Arex has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Arex is entitled to recover all damages, including attorneys' fees, that it has sustained on account of Defendants' infringement, and all gains, profits and advantages obtained by Defendants as a result of its unlawful acts.

61.     Defendants' unlawful acts were willful, deliberate, and intended to cause confusion among the public, taken in reckless disregard of Arex's rights. As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

62.     Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Arex for the damages caused by Defendants' infringement, which is ongoing. Accordingly, Arex is entitled to injunctive relief prohibiting Defendants from continuing to infringe the AlphaRex Lens Trade Dress, or any designs confusingly similar thereto.

**COUNT IV**

**UNFAIR COMPETITION IN VIOLATION OF
MISSOURI MERCHANDISING PRACTICES ACT (MMPA)
(Mo. Rev. Stat. § 407.010 *et seq.*)**

63.     Arex hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

64.     Defendants' misappropriation and unauthorized use of the AlphaRex Lens Trade Dress to promote the Accused Products is likely to confuse or mislead consumers into believing that such products are authorized, licensed, affiliated, sponsored, and/or approved by Arex, constituting deceptive, unfair, and fraudulent business practices and unfair competition in violation of the Missouri Merchandising Practice Act (MMPA), § 17200 *et seq*.

65.     Upon information and belief, Defendants' deceptive, unfair, and fraudulent business practices were willfully undertaken with full knowledge of the AlphaRex Lens Trade Dress and with the intent to misappropriate Arex's goodwill and reputation established in Arex's headlights with AlphaRex Lens Trade Dress.

66.     As a direct and proximate result of the foregoing acts, Arex has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Arex is entitled to all available relief provided for under the Missouri Merchandising Practice Act (MMPA), § 17200 *et seq.*, including an accounting and disgorgement of all illicit profits that Defendants made on account of its deceptive, unfair, and fraudulent business practices. Furthermore, because Arex has no adequate remedy at law for Defendants' ongoing unlawful conduct, Arex is entitled to injunctive relief prohibiting Defendants from unfair competition.

## COUNT V

## UNFAIR COMPETITION—MISSOURI COMMON LAW

67.    Arex hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

68.    Defendants' misappropriation and unauthorized use of the AlphaRex Lens Trade Dress to promote the Accused Products also constitutes unfair competition in violation of common law of the state of Missouri.

69.    Arex has expended substantial time, resources and effort in creating and developing automotive headlights, including the headlights that embody the AlphaRex Lens Trade Dress, which consumers recognize as originating from Arex.

70.    Upon information and belief, Defendants introduced Accused Products into the stream of commerce in order to exploit Arex's goodwill and the reputation established in automotive headlights embodying the AlphaRex Lens Trade Dress for Defendants' own pecuniary gain. Defendants' unauthorized use of the AlphaRex Lens Trade Dress resulted in Defendants unfairly benefitting from Arex's goodwill and the reputation.

71.    Upon information and belief, Defendants' unlawful acts are willful, deliberate, and intended to cause confusion among the public and taken in reckless disregard of Arex's rights. As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

72.    As a direct and proximate result of the foregoing acts, Arex has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Arex is entitled to recover all damages, including attorneys' fees, that Arex has sustained on account of

Defendants' unfair competition, and all gains, profits and advantages obtained by Defendants as a result of its unlawful acts. Furthermore, because Arex has no adequate remedy at law for Defendants' ongoing unlawful conduct, Arex is entitled to injunctive relief prohibiting Defendants from unfair competition.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff hereby prays for relief and judgment against Defendants as follows:

1.      A judgment that Defendants infringed Arex's AlphaRex Lens Trade Dress and U.S. Patent No. D1,055,331;

2.      That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be preliminarily and permanently enjoined and restrained from:

   a.   offering for sale, selling, and importing any products not authorized by Plaintiff and that include any reproduction, copy, or colorable imitation of the design claimed in the '331 Patented Design;

   b.   aiding, abetting, contributing to, or otherwise assisting anyone in infringing the '331 Patented Design;

   c.   engaging in any other activity constituting unfair competition with Arex, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements used or owned by or associated with Arex;

   d.   committing any other act which falsely represents or which has the effect of falsely representing goods and services of Defendants are licensed, authorized, offered, produced, sponsored, or in any other way associated with Arex; and

     e.   effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b);

3.    An order requiring Defendants to recall from any distributors and retailers and to deliver to Arex for destruction any Accused Products, including the means of making such products;

4.    An order requiring Defendants to file with this Court and serve on Arex within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth the manner in which Defendants complied with the injunction;

5.    An order for an accounting of all gains, profits and advantages derived by Defendants on account of the unlawful acts complained of herein pursuant to 15 U.S.C. § 1117(a) and any other applicable federal statute;

6.    An award of damages equal to Defendants' profits and all damages sustained by Arex as a result of Defendants' wrongful acts, after an accounting, pursuant to 35 USC § 284;;

7.    An award of damages equal to treble Defendants' profits or Arex's damages, whichever is greater, on account of Defendants' willful infringement, and in no event less than $500,000;

8.    An award of punitive damages and Arex's costs, attorneys' fees, and interest as allowed under all applicable federal statutes and Missouri state laws; and

9.    That Plaintiff be awarded its reasonable attorneys' fees and costs;

10.    Granting Plaintiff pre-and post-judgment interest on its damages, together with all costs and expenses; and

11.    Award any and all other relief that this Court deems just and proper.

Dated:  April 18, 2025                          Respectfully submitted,

By:   /s/ Rudolph A. Telscher, Jr.
Rudolph A. Telscher, Jr., 41072MO
**HUSCH BLACKWELL LLP**
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
Telephone: 314-480-1500
Facsimile: 314-480-1505
rudy.telscher@huschblackwell.com

Alexander Chen, Esq.
Attorney Bar No. 245798CA
Theodore S. Lee, Esq.
Attorney Bar No. 281475CA
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Drive, Suite 800
Irvine, California 92618
Telephone: 949-250-1555
Facsimile 714-882-7770
alexc@inhouseco.com
tlee@inhouseco.com

*Attorneys for Plaintiff Arex Industries, Inc.*